IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| POWER COMPONENT SALES CO. : | | CIVIL ACTION |
| : | | |
| v. : | | |
| : | | NO: 02-2740 |
| SST BEARING CORPORATION : | | Judge Petrese B. Tucker |
| : | | |
| : | | JURY TRIAL DEMANDED |

**PLAINTIFF POWER COMPONENT SALES CO.'S MEMORANDUM IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR TRANSFER VENUE**

Plaintiff, Power Component Sales Co., through counsel, moves the Court to dismiss

defendant's motion to dismiss plaintiff's Complaint or transfer venue of the case from the Eastern

District of Pennsylvania to the Southern District of Ohio, Western Division. Plaintiff opposes this

motion for the reasons contained in the accompanying memorandum of law.

Respectfully submitted,

Date: September 13, 2002                    _____

KRAMER & KRAMER, LLP
Mitchell A. Kramer
1077 Rydal Road, Suite 100
Rydal, PA 19046
(215) 887-9030

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

POWER COMPONENT SALES CO.     :          CIVIL ACTION
                                     :
                v.            :
                                     :          NO: 02-2740
SST BEARING CORPORATION      :          Judge Petrese B. Tucker
                                     :
                                     :

**PLAINTIFF POWER COMPONENT SALES CO.'S MEMORANDUM IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR TRANSFER VENUE**

**I.      Factual and Procedural Background**

       Plaintiff, Power Component Sales Co. ("Power Component") initiated this action on May

7, 2002, by filing a three-count complaint against defendant, SST Bearing Corporation ("SST"),

alleging two breach of contract claims and violation of the Pennsylvania Commissioned Sales

Representatives Law ("Pennsylvania sales representatives law").  *See* Complaint, attached hereto

and made part hereof as Exhibit 1.  Plaintiff is a Pennsylvania corporation with its principal

place of business in Pottstown, Pennsylvania.  Plaintiff entered into a "Sales Representative

Agreement" with SST, an Ohio corporation, on or about February 24, 1997, to be SST's sales

representative and solicit wholesale orders from customers on behalf of SST in a designated

sales territory, including the Eastern District of Pennsylvania.  *See* Sales Representative

Agreement, attached hereto and made part hereof as Exhibit 2.  Plaintiff's sales territory

consisted of twelve states in the United States, including Pennsylvania.  *See* Exhibit B to the

Sales Representative Agreement, attached hereto as Exhibit 3.  SST imports and sells bearings

and sprockets through representatives such as plaintiff to customers that purchase such products for resale.

On or about May 29, 1997, plaintiff and SST entered into a "Warehousing Agreement," attached hereto and made part hereof as Exhibit 4, which called for the warehousing and shipping of defendant's products within plaintiff's designated sales territory.  The warehouse was in Pottstown, Pennsylvania.  *See* Exhibit 4, ¶ 9.  Although the terms of the Sales Representative Agreement were incorporated into the Warehousing Agreement by reference, the Sales Representative Agreement never incorporated the terms of the Warehousing Agreement by reference.

SST terminated its Sales Representative Agreement with plaintiff, by letter dated March 23, 1999, a copy of which is attached hereto and made part hereof as Exhibit 5.  The Sales Representative Agreement required that if either party wanted to terminate the agreement, with or without cause, then the party must give at least thirty days' prior written notice of termination to the other party.  *See* Exhibit 2, ¶ 10.  The termination letter stated that commissions would only be paid for invoices processed through March 22, 1999.  Defendant not only failed to give the notice required in the Sales Representative Agreement, but even terminated the agreement the day before notice was given.  *See* Exhibit 5.  The Sales Representative Agreement also required that upon termination, plaintiff would be entitled to commissions on all orders received by SST prior to the termination of the agreement, regardless of the time of shipment of defendant's products.  *See* Exhibit 2, ¶ 11(b).  SST has yet to compensate plaintiff for all commissions due and owing to plaintiff, as required by the Sales Representative Agreement.

Similarly, the Warehousing Agreement provided that either party may terminate the

agreement, with or without cause, by giving sixty days' prior written notice of termination to the other party. *See* Exhibit 3, ¶¶ 14-16. However, defendant never gave plaintiff any notice of termination of the Warehousing Agreement. Further, pursuant to the Warehousing Agreement, defendant was required to pay plaintiff shipping commissions at the rate of 5 percent of the invoice price of each item shipped within the territories, but has failed to pay all of the shipping commissions due and owing to plaintiff for all products shipped within the territory.

Defendant served its "Motion to Dismiss or Transfer Venue" (Defendant's "Motion") on August 19, 2002. Plaintiff respectfully requests the Court to deny defendant's Motion, on the basis that plaintiff's chosen venue is proper. Alternatively, transfer, not dismissal, would be the proper course of action.

## II.    <u>Argument</u>

A.    <u>The Forum Selection Clause Should Be Deemed Unenforceable Under Basic Contract Principles</u>

Defendant argues that this action must be either transferred to the federal district court for the Southern District of Ohio or dismissed and refiled in state court, claiming that the forum selection clause contained in the Warehousing Agreement governs the proper venue in this matter. The forum selection clause is as follows:

> This Agreement shall be interpreted in accordance with the Laws of the State of Ohio. The parties agree that they are doing business in the State of Ohio: are subject to the 'Long Arm' jurisdiction of the State of Ohio and consent to litigate any disputes hereunder in the Federal or State Courts located in the State of Ohio.

*See* Exhibit 4, ¶ 22.

However, defendant does not discuss or cite any legal authority in its Motion on how this forum selection clause, even if it is validly enforceable as to the Warehousing Agreement,

4

applies to the Sales Representative Agreement.  The Sales Representative Agreement does not

contain a forum selection clause.  The Warehousing Agreement, which was signed about three

months after the Sales Representative Agreement was signed on May 29, 1997, only states that

"[t]his Agreement is *executed contemporaneously* with the annexed Distributor Sales

Representative Agreement, the terms of which are incorporated herein by reference.  Breach of

the terms of either of these agreements shall be a breach of the other."  *See* Exhibit 4, ¶ 17.

The phrase "executed contemporaneously," in this case, does not mean that the Sales

Representative Agreement in fact merged into the Warehousing Agreement and became one

document.  "Executed contemporaneously" means, merely, that the agreements should be

considered to be executed *at the same time*.  Only when documents are executed at the same time

*and* are intertwined by the same subject matter or transaction will they be construed together and

interpreted as a whole.  *See Nova Ribbon Products, Inc. v. Lincoln Ribbon, Inc.*, 1992 WL

211544, at *5 (E.D.Pa. 1992).  The Sales Representative Agreement deals with entirely different

subject matter and terms than the Warehousing Agreement.  The Sales Representative

Agreement involves contractual terms pertaining to the commissions earned on sales orders

entered in plaintiff's territory, and the Warehousing Agreement involves contractual terms

pertaining specifically to warehousing and shipping of defendant's products.

In *Nova*, there were three contracts at issue that were executed at the same time, and

contained in one of them was a forum selection clause with the following language:

> This Agreement shall be governed exclusively by the law of the
> State of Israel.  The courts of Nazareth, Israel shall have exclusive
> jurisdiction over all and any matters connected in any way, directly
> or indirectly, with this Agreement and/or over all matters relating to
> the legal relations between the parties, whether these matters precede
> this Agreement, arise out of it or postdate it.

5

*Id.* at *2 (deeming the forum selection clause applied to all three agreements at issue because the parties agreed that Israeli law would govern any disputes that arose between them).

The forum selection clause of concern in *Nova* explicitly states that "all matters relating to the legal relations between the parties, whether these matters precede this Agreement, arise out of it or postdate it." *Id.*  On the contrary, in the instant matter, the forum selection clause contains no such language that extends beyond the Warehousing Agreement itself, evident in the language, "[parties] consent to litigate any disputes *hereunder* in the Federal or State Courts located in the State of Ohio."  *See* Exhibit 4, ¶ 22 (emphasis added).

In addition, the phrase "the terms of which are incorporated herein by reference" does not presuppose that the terms of the Warehousing Agreement were incorporated into the Sales Representative Agreement.  No explicit provision was made in the Warehousing Agreement that the Warehousing and Sales Representative Agreements merged into one document.  Therefore, defendant fails to prove just how the forum selection clause applies to the Sales Representative Agreement.

Further, the language of Paragraph 17 in the Warehousing Agreement, which purports to incorporate the Sales Representative Agreement by reference, is ambiguous, and even if both agreements are construed together, they do not make any sense because both contracts are dealing with entirely different subject matter.

In addition, if the forum selection clause would "impose unreasonable restraints or burdens, effectively depriving a plaintiff of his day in court," then it will not be enforced.  *Nova*, 1992 WL 211544, at *4 (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) (holding that forum selection clauses are generally valid, unless fraud or overreaching is present, or

6

plaintiff would be effectively deprived of its day in court).  Even if it is found by the Court that

the forum selection clause is enforceable as to the Warehousing Agreement, splitting plaintiff's

claims up and having them tried in two different courts, depending on whether claims arose

under the Sales Representative Agreement or the Warehousing Agreement, would be an

unreasonable, time-consuming and expensive financial burden for plaintiff.  Piecemeal litigation

should be avoided if possible, and not only drains the resources of the parties but also the

resources of the courts.  *See NYLife Distributors, Inc. v. Adherence Group, Inc.*, 72 F.3d 371,

376 (3d Cir. 1995) (commenting on the importance of the efficient administration of judicial

resources).

      Therefore, plaintiff respectfully requests that the forum selection clause be found

unenforceable as to the Sales Representative Agreement and Warehousing Agreement.

      B.    <u>Defendant's Motion To Transfer Or Dismiss Should Be Denied Because Venue Is
Proper In The Eastern District Of Pennsylvania</u>

      Questions regarding transfer of venue are governed by 28 U.S.C. § 1404(a), which

provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court

may transfer any civil action to any other district or division where it might have been brought."

A motion to transfer, therefore, calls on the district court to exercise its discretion by

adjudicating such motions according to an "'individualized, case-by-case consideration of

convenience and fairness.'"  *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108

S.Ct. 2239, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct.

805, 812, 11 L.Ed.2d 945 (1964) (holding that Section 1404(a) governs a district court's decision

to allow a case to be transferred to the venue contained in a forum selection clause)).  Such

motions are not to be liberally granted.  *See First Union National Bank v. U.S.*, 55 F.Supp.2d

331, 332 (E.D.Pa. 1999) (holding that venue properly lay in the Eastern District of

Pennsylvania).  Further, *Stewart* explains that in a district court's analysis of the multitude of

factors that determine whether an action should be transferred to another district, forum selection

clauses "should receive neither dispositive consideration . . . nor no consideration . . . ."  *Stewart*,

487 U.S. at 31.

   In determining whether a district court should transfer an action to another district or

division in which it might have been brought, the Court must "'consider all relevant factors to

determine whether on balance the litigation would more conveniently proceed and the interests

of justice be better served by transfer to a different forum.'"  *Jumara*, 55 F.3d at 879 (quoting 15

CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND

PROCEDURE: JURISDICTION AND RELATED MATTERS § 3848, at 385 (2d ed. 1986) [hereinafter

referred to as WRIGHT].

   Also, various private and public interests, included in the "interests of justice" analysis,

are to be considered under Section 1404(a).  Private interests include plaintiff's forum

preference, defendant's forum preference, whether the claim arose elsewhere, the convenience of

the parties as indicated by their relative physical and financial condition, the convenience of the

potential witnesses and the location of books and records.  Public interests include the

enforceability of the judgment, practical considerations that could make the trial easy,

expeditious or expensive, relative administrative difficulty in the two fora resulting from court

congestion, the local interest in deciding local controversies at home, the public policies of the

fora and the familiarity of the trial judge with the applicable state law in diversity[1] cases. *See Jumara*, 55 F.3d at 879 (citing WRIGHT). While courts normally defer to plaintiff's choice of forum, plaintiffs that have entered into forum selection clauses bear the burden of demonstrating why they should not be bound by their contractual choice of forum. *See id.* at 880. However, as reiterated, the existence of a forum selection clause is only one of the many factors considered. *See id.*

Plaintiff submits that a consideration of the public policies of the fora compel a conclusion that the action should not be transferred or otherwise dismissed. Although the forum selection clause at issue in the Warehousing Agreement states that the parties "consent to litigate any disputes hereunder in the Federal or State Courts located in the State of Ohio," plaintiff seeks, among other claims against defendant, to recover under the Pennsylvania Commissioned Sales Representatives Law, which provides that

> Nothing in this act shall invalidate or restrict any other or additional right or remedy available to sales representatives or preclude sales representatives from seeking to recover in one action on all claims against a principal. The provisions of this act may not be waived. In applying the provisions of this act, the courts of this Commonwealth shall not recognize any purported waiver of the provisions of this act,

---

[1] Although defendant does not directly address the issue of whether plaintiff met the amount in controversy necessary for diversity jurisdiction as a basis for its Motion to Dismiss (*See* defendant's Motion to Dismiss, at 2, n.1), plaintiff discusses this issue in order to directly counter defendant's insinuation in Footnote 1 that the amount in controversy necessary for diversity jurisdiction has not been met.

As plainly seen in plaintiff's Complaint, the amount in controversy needed for federal jurisdiction founded on diversity of citizenship has been met. *See* Exhibit 1. In addition, it is well-settled that the allegations on the face of the complaint generally control the amount in controversy. *See Jumara v. State Farm Insurance Co.*, 55 F.3d 873, 877 (3d Cir. 1995) (holding that determining whether venue is appropriate in the original forum or whether an action should be transferred depends on a multi-factor test incorporating the requirements of 28 U.S.C. § 1404(a)).

               whether by express waiver or by attempt to make a contract or
               agreement subject to the laws of another state.

Pennsylvania Commissioned Sales Representatives Law, "Construction of act," 43 P.S. § 1476.

This statute applies primarily to defendant's violations of the Sales Representative Agreement,

which has no forum selection clause.

     As a consequence, the forum selection/choice of law clause in the Warehousing

Agreement is unenforceable, due to the fact that this provision conflicts with the strong public

policy interest of the state of Pennsylvania to protect its citizens under its laws.  Plaintiff not

only solicited orders in Pennsylvania, but also resides in Pennsylvania.  The Ohio Payment of

Commissions Due Sales Representatives Law ("Ohio sales representative law"), Ohio Rev. Code

Ann. § 1335.11, does not provide plaintiff with any protection, because the plaintiff did not

contract with defendant to solicit orders in the state of Ohio, nor does plaintiff reside in Ohio,

and the law defines a sales representative as one who contracts with a principal to solicit orders

within the state.  *See* Ohio Rev. Code Ann. Sec. 1335.11(A).

     Ohio, as the Ohio sales representative law sets forth, does not protect out-of-state sales

representatives who did not solicit orders within the state, much less consider it a matter of

public policy to protect such sales representatives.  *See, e.g., Howting-Robinson Associates, Inc.*

*v. Bryan Custom Plastics*, 65 F.Supp.2d 610, 613 (E.D.Mich. 1999) (holding that the application

of Ohio sales representative law to a Michigan sales representative agency would abrogate a

fundamental policy of Michigan law because the Ohio sales representative statute offered less

protection in the collection of sales commissions than the Michigan sales representative statute).

     An analysis of other relevant factors to be considered under Section 1404(a)

demonstrates that the current venue is the proper one.  This action's only tie to Ohio is the fact

that it is defendant's resident state.  Plaintiff is located in this district, sold defendant's products

in this district, warehoused defendant's products in this district and conducts a substantial

volume of business in this district.  The events giving rise to plaintiff's claims in its Complaint

occurred in Pennsylvania, where defendant chose to do business with plaintiff.  *See* Exhibit 1.

Further, by virtue of the fact that Pennsylvania and Ohio are neighboring states,

defendant has not proven or even attempted to establish that based on principles of convenience

and fairness, it would be inconvenient or difficult for it to litigate in Pennsylvania.  As pointed

out in *Jumara*, "some courts have refused to apply this multi-factored balancing test where the

transfer requested involves a forum which is a relatively short distance from the original forum."

*Id.* at 880 (acknowledging the validity of courts' rationale for not considering transfer to another

venue when the transfer requests involve a forum that is a relatively short distance from the

original forum).

Most of plaintiff's potential witnesses would have to do some traveling, whether the

litigation occurred in Pennsylvania or Ohio, and neither forum would be more or less convenient

than the other.  Moreover, location has no real relevance to the production of documents in a

case of this nature, in which documents are typically copied and produced to opposing counsel

via mail.  In reality, litigation requires far more travel by attorneys, who may be required to

attend multiple hearings and status conferences.  Not only is Pennsylvania the proper forum but

also, in light of the foregoing discussion, a more appropriate one over Ohio.  Therefore,

defendant's Motion should be denied.

C.    If The Court Decides That This Action Must Be Moved To A Different Forum,
      The Only Appropriate Means With Which To Do This Is Transferring The
      Action, Not Dismissing The Action Under A 12(B)(6) Motion

While plaintiff firmly believes that this case should properly remain in this Court, the Court should transfer, rather than dismiss the action, if the Court is so compelled. If an action can be brought in any proper federal venue via diversity jurisdiction, transferring the case to another federal district court is the preferred method over dismissal, according to the Third Circuit. *See Salovaara v. Jackson National Life Insurance Co.*, 246 F.3d 289, 298-99 (3d Cir. 2001) (stating that if venue is proper in the initial forum court, dismissal would be inappropriate). Therefore, the motion to dismiss plaintiff's complaint, pursuant to Fed.R.Civ.P. 12(b)(6), should be denied.

<u>Conclusion</u>

For the foregoing reasons, plaintiff Power Component Sales Co. respectfully requests that

defendant's Motion to Dismiss or Transfer Venue be denied, and allow plaintiff's case to remain in the Eastern District of Pennsylvania.

Respectfully submitted,

Date: September 13, 2002

s/Mitchell A. Kramer
KRAMER & KRAMER, LLP
Mitchell A. Kramer
1077 Rydal Road, Suite 100
Rydal, PA 19046
(215) 887-9030

S:\POWER COMPONENTS\oppostransdismiss091102.wpd

## CERTIFICATE OF SERVICE

I, Mitchell A. Kramer, attorney for Plaintiff , hereby certify that I have this date served a

13

true and correct copy of Answer of Plaintiff to Defendant's New Matter and Counterclaim by

first class mail on counsel for defendant as follows:

> Kathryn A. Dux, Esquire
> GERMAN, GALLAGHER & MURTAGH
> Fifth Floor, The Bellevue, 200 S. Broad Street
> Philadelphia, PA 19102
>
> Deborah R. Lydon, Esquire
> DINSMORE & SHOHL, LLP
> 1900 Chemed Center
> 255 E. 5th Street
> Cincinnati, OH 45202

_____
Mitchell A. Kramer
KRAMER & KRAMER, LLP
Attorney for Plaintiff

Dated: September 13, 2002